

EOD
03/14/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HYDRO-ACTION, INC. | § | Case No. 01-10209 |
| | § | |
| Debtor | § | Chapter 7 (converted from Ch. 11) |

---

| | | |
|---|---|---|
| DANIEL J. GOLDBERG, Trustee | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 04-1059 |
| | § | |
| BRUCE A. CRAIG, et al. | § | |
| | § | |
| Defendants | § | |

## MEMORANDUM OF DECISION

Before the Court is the Motion for Summary Judgment (the "Motion") filed by Defendants Gig Drewery, Trina Drewery, Crimson Hill, L.P., Hydro-Action Distributing, Inc., Ponderosa Development, L.P., Ponderosa Management, Inc., Aqua Partners, Ltd., and Aqua Drip Innovations, Inc. (hereafter cumulatively referred to as the "Drewery Defendants"). Based upon the Court's consideration of the Motion, the memoranda in support and opposition thereto, and the proper summary judgment evidence referenced in this Memorandum of Decision, and for the reasons stated in this Memorandum of Decision, the Court concludes that the Drewery Defendants' Motion for Summary

Judgment should be granted in part and denied in part.[1]

## Factual and Procedural Background

Hydro-Action, Inc. (the "Debtor") filed a Chapter 11 petition for bankruptcy relief on February 2, 2001, and subsequently confirmed a Chapter 11 plan of reorganization. More than two years after the case filing, on May 27, 2003, the case was converted to a Chapter 7 liquidation. Shortly thereafter, Daniel Goldberg (the "Trustee") was appointed Chapter 7 Trustee, and on May 26, 2004, he commenced this adversary proceeding. The Drewery Defendants were all insiders of the Debtor or parties related to such insiders of the Debtor. The Trustee seeks through this adversary proceeding to recover various sums of money as either preferential or fraudulent transfers, to assert a state law cause of action for breach of fiduciary duty, and to recover allegedly misappropriated property of the bankruptcy estate. He asserts these claims under 11 U.S.C. §§542, 544, 547, 548, and 549, and state laws incorporated through 11 U.S.C. §544.

The Drewery Defendants bring this Motion for Summary Judgment asserting that the Trustee is time-barred from recovering on most of his alleged causes of action, and that another cause of action (brought under 11 U.S.C. §549) fails for lack of evidence. While the Drewery Defendants submitted various documents in support of the Motion

---

[1] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(E), (F), (H) and (O).

which were challenged by the Trustee,[2] the Court finds that consideration of the disputed documents is not required in order to reach its decision on this matter. The Court does, however, rely on documents entered upon the docket of this Court during the Hydro-Action bankruptcy case.

## Discussion

*Standard for Summary Judgment*

The Drewery Defendants bring their Motion for Summary Judgment in the adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[2] The Trustee filed a Motion to Strike Defendant's Summary Judgment Evidence, alleging improper authentication and inadmissability under the hearsay rules, but the evidence relevant to this decision is derived from documents appearing on the Court's docket in this adversary proceeding and in the underlying bankruptcy case.

*Catrett*, 477 U.S. 317, 323 (1986). While the Trustee contests the admissibility of the summary judgment evidence accompanying the Motion, there can be no genuine issue of material fact as to the filing date and contents of documents actually filed with the Court. The Court is free to take judicial notice of such evidence in determining the merits of a motion for summary judgment. *See* FED. R. EVID. 201(b) and (f). Once the Court has evaluated that evidence, it must determine whether it is sufficient to preclude controversy as to any material fact.

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, if the evidence demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Explor., Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

The Drewery Defendants assert a right to summary judgment on various grounds, each applicable only to portions of the Trustee's complaint. The Court will first consider the Drewery Defendants' arguments with respect to the timing of the Trustee's complaint, and then proceed to their argument with respect to a "no evidence" summary judgment.

*Statute of Limitations*

11 U.S.C. §546(a) provides that:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of–

    (1) the later of–

        (A) 2 years after the entry of the order for relief; or

        (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

    (2) the time the case is closed or dismissed.

Because this case has not yet been closed or dismissed, and because no trustee was appointed or elected within the two-year period after the entry of the order for relief, subparagraph (A) sets the deadline for bringing actions under §§544, 547 and 548 in this case as two years after the entry of the order for relief. This action was indisputably commenced three years and three months after the entry of the order for relief. Thus, under the plain language of the statute, the Trustee is time-barred from bringing the portions of his complaint relying on §§544, 547, and 548,[3] unless some equitable

---

[3] Because the Trustee lacks standing to assert his state law causes of action absent the authority granted by 11 U.S.C. §544, those portions of his complaint pertaining to state law are also affected by the operation of the §546(a) limitations period. Furthermore, the applicability of §108(a), addressed in both the Defendants' Motion for Summary Judgment and the Trustee's response thereto, is in any case only relevant to state law claims, and is irrelevant in this particular case because it acts only to extend deadlines other than that imposed upon the Trustee under §546(a). Even if such deadlines were extended, §546(a) would still apply. It is possible that §108(a) can work a shorter limitations period than §546(a), but in this case, where the deadline of §546(a) was not met, whether §108(a) was met or not is

principle precludes application of the limitations period established by §546(a). The legislative history of that section notes the possibility of such equitable tolling, stating:

> This section ... imposes a 2-year statute of limitations within which an appointed trustee must bring an avoidance action. The purpose of a statute of limitations is to define the period of time that a party is at risk of suit. This section defines the applicable statute of limitations as 2 years from the entry of an order of relief or 1 year after the appointment of the first trustee if such appointment occurs before the expiration of the original 2-year period. The section is not intended to ... have any bearing on the equitable tolling doctrine where there has been fraud determined to have occurred.

140 Cong. Rec. H10752-01, at H10768 (October 4, 1994).

In his response to the Drewery Defendants' motion for summary judgment on their affirmative defense of limitations, the Trustee asserts that the §546(a) statute of limitations should be equitably tolled in this case.

The doctrine of equitable tolling has historically been used to prevent the inequitable application of a statute of limitations. *Bailey v. Glover*, 88 U.S. 342, 349-50 (1875) ["[T]o hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the Statute of Limitations to protect it, is to make the law which was designed to prevent fraud, the means by which it is made successful and secure."]; *but see Chase Sec. Corp. v.*

---

irrelevant.

*Donaldson*, 325 U.S. 304, 313-14 (1945).[4] It is "read into every federal statute of limitations," *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946), and is "applied under federal law in two types of situations: (1) where defendant's wrongful conduct prevented plaintiff from timely asserting his claim, and (2) where extraordinary circumstances outside plaintiff's control make it impossible for plaintiff to timely assert his claim." *In re Hayes*, 327 B.R. 453, 459 (Bankr. C.D. Cal. 2005). Stated in more precise terms, "the application of equitable tolling is appropriate where: (1) a defendant has actively misled a plaintiff; (2) a plaintiff has been prevented, in some extraordinary way or circumstance, from asserting his rights; or (3) a plaintiff has asserted his rights in a timely manner, but in the wrong forum." *In re Miller*, 333 B.R. 368, 372 (Bankr. N.D. Tex. 2005). While equitable tolling is generally a question of fact, it can in proper circumstances be decided as a matter of law. *See Osherow v. Porras (In re Porras)*, 312 B.R. 81, 108 (Bankr. W.D. Tex. 2004).

Applying those standards to the summary judgment evidence presented, the Court concludes that there are genuine issues of material fact to be decided as to whether equitable tolling should be applied to avoid the impact of the §546(a) statute of

---

[4] In *Chase Security*, a unanimous Supreme Court noted:
> Statutes of limitations always have vexed the philosophical mind...[but they] find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay.

*Chase Sec. Corp.*, 325 U.S. at 313-14.

limitations as to the causes of action asserted by the Trustee under §§544 and 548. However, as to the Trustee's §547 preference actions against the Drewery Defendants, there is no proper summary judgment evidence to create even a genuine issue of material fact regarding whether, as alleged by the complaint, the Drewery Defendants engaged in any concealment of the transfers made the basis of the Trustee's complaint.[5] Nor is there any evidence that the Trustee asserted any claims in an improper forum.

Thus, the sole basis for any application of equitable tolling is the existence of an extraordinary circumstance which prevented the Trustee from asserting his rights. The only such circumstance asserted by the Trustee is the fact that the case was not converted, and, therefore, he was not appointed prior to the expiration of the limitation period under §546. The Trustee claims that, since it was impossible for him to have pursued these transfers prior to his appointment, equitable tolling should have preserved his right to do so.

While §546(a) is subject to equitable tolling, the singular fact that the limitations period expired prior to the appointment of the Chapter 7 trustee does not constitute an equitable consideration sufficient to trigger the tolling doctrine. In enacting §546(a), Congress clearly knew that a chapter 7 trustee could be appointed more than two years after the order for relief, yet it specifically provided for a one-year extension of the limitations period and only if the trustee was appointed within the two-year period. 11

---

[5] *See infra* note 8 and accompanying text.

U.S.C. §546(a)(1)(B). Congress could have enacted a different version in order to protect the rights of a chapter 7 trustee under circumstances such as this. It elected not to do so.

Section 546(a) clearly contemplates a finite period in which all avoidance actions should be brought. In the present case, although the Trustee was not involved in this case prior to the expiration of the §546 limitation period, the creditors for whose benefit the Trustee is now acting were, and the rights which the Trustee wishes to assert on their behalf were also in existence. As contemplated by the Bankruptcy Code, the authority to bring the preference actions on behalf of the bankruptcy estate in that two-year period primarily rested with Hydro-Action, Inc., in its capacity as the debtor-in-possession.[6] Whether, as is often the case, the prosecution of these preference actions was pragmatically subordinated to the Debtor's focused attempt to confirm a Chapter 11 reorganization plan (particularly since in this instance such an attempt was occurring in the midst of documented disputes between the Drewery and Craig management factions) or whether, as alleged by the Trustee, Hydro-Action as Debtor-in-Possession was adversely motivated to bring such actions because of the degree of control exercised by the individual Defendants, the Bankruptcy Code recognizes the conflicting loyalties and priorities of a debtor-in-possession in Chapter 11 and contemplates that the exercise of

---

[6] The prior version of §546(a) was not clearly applicable to debtors-in-possession, leaving courts to struggle with the equities of proscribing untimely avoidance actions resulting from intentional delays by debtors-in-possession. *See generally In re Tamiami Range & Gun Shop, Inc.*, 130 B.R. 617 (Bankr. S.D. Fla. 1991). The result was a circuit split on the point, *see Compuadd Corp. v. Texas Instruments, Inc. (In re Compuadd, Corp.)*, 137 F.3d 880, 881-82 (5th Cir. 1998), but the Code revision enacted in 1994 resolved this split. *Id.* at 884.

trustee powers by a debtor-in-possession will be closely supervised by creditors whose interests might be affected thereby. In addition to a creditor's right to exercise legal remedies for its own benefit, the Code also authorizes the appointment of creditor committees to protect the interests of a particular creditor constituency. 11 U.S.C. §1102. If a debtor-in-possession wrongfully refuses to exercise the authority to prosecute certain causes of action which arise under the Bankruptcy Code or under state law, the jurisprudence is clear, particularly in this circuit, that a committee of creditors may seek authorization to prosecute such actions on behalf of the bankruptcy estate. *La. World Exposition v. Fed. Ins. Co.,* 858 F.2d 233, 247-48 (5th Cir. 1988); *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1363 (5th Cir. 1986); *Fuel Oil Supply and Terminaling Co. v. Gulf Oil Corp.,* 762 F.2d 1283, 1286 (5th Cir. 1985). *See also, e.g., Smart World Techs., LLC v. Juno Online Servs., Inc.* ( *In re Smart World Techs., LLC* ), 423 F.3d 166, 176 & n. 15 (2d Cir. 2005); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 583 (3d Cir. 2003) (en banc); *Fogel v. Zell,* 221 F.3d 955, 965 (7th Cir. 2000); *Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.* (*In re Gibson Group, Inc.*), 66 F.3d 1436, 1440-41 (6th Cir. 1995). In appropriate circumstances, creditors may seek an investigation of such circumstances by an examiner, 11 U.S.C. §1104(c), or even the replacement of the debtor-in-possession by a trustee. 11 U.S.C. §1104(a).

Thus, creditors must act as watchmen on the tower to assure that the debtor-in-

possession, as the authorized representative of a bankruptcy estate, is correctly exercising its discretion regarding the pursuit of causes of action which may be possessed by that estate. *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 821 (10th Cir. 1995) ["Moreover, creditors are not helpless when a debtor-in-possession refuses to bring avoidance actions and the statute of limitations is nearing expiration. Under 11 U.S.C. § 1104 (1993), any party in interest may request appointment of a trustee, and under 11 U.S.C. § 1109(b) (1993), a creditors' committee or even an individual creditor may, with leave of the bankruptcy court, initiate avoidance and other actions when the debtor-in-possession has failed to do so."] If the creditors in this case had knowledge of, or with a reasonable amount of diligence could have obtained knowledge of, the potential avoidance actions and the debtor-in-possession's election to forego the pursuit of such actions as the two-year period progressed, neither they nor any trustee subsequently appointed on their behalf will be heard to complain about the inequities of the application of a statute of limitations.

In this case, every preferential transfer and transferee identified in the Trustee's complaint under §547 was fully noted on the bankruptcy schedules filed simultaneously with the Debtor's chapter 11 bankruptcy petition, over three years prior to the Trustee bringing this action.[7]  Such transfers were again exhaustively listed in an exhibit to the

---

[7] The payments were listed under the instruction to: "List all payments made within one year immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders." *See Statement of Financial Affairs,* filed on February 2, 2001 (dkt #1) at p. 61.

approved disclosure statement in the case.[8] Finally, the creditors supported, and the court confirmed as modified, the Debtor's First Amended Plan of Reorganization which contained the following provision:[9]

> 9.6 <u>Preservation and Post-Effective Date Ownership and Management of the Debtor's Claims, Demands, and Causes of Action</u>. Subject to the provisions of this Plan, all claims, demands and causes of action held by, through or on behalf of the Estate against any other Person are hereby preserved in full and no provision of the Plan shall impair the rights of the Debtor, as applicable, with respect to any of such claims, demands and causes of action. . . . All claims for recovery against any party not released in and by virtue of this Plan arising under any of sections 544, 545, 546, 547, 548, 549, 550, 551 or 553(b) of the Bankruptcy Code are preserved notwithstanding the occurrence of the Effective Date by and in the name of the Debtor and Reorganized Debtor or its designee and shall be managed solely by the Reorganized Debtor for the benefit of the Class XXXII beneficiaries of the Plan.

Hence the creditors in this case are charged with knowledge of the potential preference actions throughout the two-year period contemplated by §546 of the Code and, with such knowledge, they did nothing to oppose the Debtor-in-Possession's forbearance on the pursuit of any such claims and, in fact, subsequently supported the continuing

---

[8] *See Third Amended Disclosure Statement* filed on December 11, 2001 (dkt #412).

[9] The Official Committee of Unsecured Creditors actually filed a formal pleading urging the Court to confirm the amended plan over the objection of Mr. Craig's entity, BTA Investments, L.P., and setting forth how the committee had negotiated with the Debtor for changes resulting in the modifications to the plan. See *Motion of Official Unsecured Creditors' Committee for Confirmation of Debtor's First Amended Plan of Reorganization, as Modified* (dkt #435) filed on February 25, 2002.

control of those causes of action by the Reorganized Debtor. In light of such clearly established circumstances, equity is not served by granting to the Trustee an extension of time to now pursue those actions for the benefit of those creditors. The Trustee is therefore time-barred from bringing the preference causes of action against the Drewery Defendants and, pursuant to §546, summary judgment will be awarded to the Drewery Defendants on such claims.

*"No Evidence" Summary Judgment*

The Drewery Defendants further assert that because the Trustee failed to initiate any discovery in this case, and because the record is devoid of any reference to the timing of the Defendants' alleged post-petition wrongs, they are entitled to a summary judgment on the Trustee's attempt to avoid certain post-petition transactions due to a total lack of evidence in the record to sustain the Trustee's burden of persuasion on an essential element under §549. While federal law clearly contemplates summary judgment in circumstances where there is truly no evidence of an essential element, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the party moving for summary judgment must make some showing that evidence on an essential point is wholly lacking. As more particularly described by Judge William Wayne Justice in *Marshall Indep. Sch. Dist. v. U.S. Gypsum Co.*, 790 F. Supp. 1291 (E.D. Tex. 1992):

> Even where the non-moving party has the burden of persuasion on an issue, the summary judgment movant still has the initial burden of showing the

absence of a genuine issue of material fact. It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove its case. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record. If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied, and the court need not consider either any evidence submitted by the non-moving party or whether the moving party has met its ultimate burden of persuasion that summary judgment should be granted in its favor.

*Id.* at 1299-1300. This burden requires something more than what the Drewery Defendants have provided in the present case: a conclusory assertion that the Trustee has no evidence on the point. Perhaps if the Drewery Defendants had filed interrogatories with the Trustee requesting information on the specific instances of wrongdoing, and if the Trustee had failed to respond sufficiently, the entry of a "no-evidence" summary judgment would be appropriate. *See Celotex*, 477 U.S. at 320 (noting the respondent's failure to identify certain facts in the process of answering interrogatories). But in the present case, the Drewery Defendants, like the Trustee, elected to forego any discovery. They are bound by the consequences of that decision, which may include the joy of first learning the extent of the Trustee's evidence at trial.

**Conclusion**

For the foregoing reasons, the Court finds that summary judgment in favor of the Drewery Defendants should be granted with respect to the Trustee's preferential transfer claims asserted by the Trustee under §547. With respect to the Trustee's claims under §§544 and 548, a genuine issue of material fact exists as to whether the statute of limitations imposed under §546 should be equitably tolled. The Court intends to resolve such factual issues through a separate hearing to be conducted prior to any trial on the merits of the complaint. Thus, the Drewery Defendants are not entitled to summary judgment on the application of §546 to the avoidance claims brought by the Trustee under §§544 and 548; nor are they entitled to a summary judgment on the Trustee's post-petition avoidance claims asserted under §549. An appropriate order will be entered consistent with this Memorandum of Decision.

Signed on 3/14/2006

*/s/ Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE