
EOD
06/01/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HYDRO-ACTION, INC. | § | Case No. 01-10209 |
| | § | |
| Debtor | § | Chapter 7 (converted from Ch. 11) |
| DANIEL J. GOLDBERG, Trustee | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 04-1059 |
| | § | |
| BRUCE A. CRAIG, et al. | § | |
| | § | |
| Defendants | § | |

## **MEMORANDUM OF DECISION**[1]

As a result of an order entered on March 14, 2006 which directed that a separate trial be conducted on such issue, the Court has considered whether the 2-year statute of limitations, as imposed under 11 U.S.C. §546 and as otherwise properly pled by Defendants Gig Drewery, Trina Drewery, Crimson Hill, L.P., Hydro-Action Distributing, Inc., Ponderosa Development, L.P., Ponderosa Management, Inc., Aqua Partners, Ltd., and Aqua Drip Innovations, Inc. (hereafter the "Drewery Defendants"), should be equitably tolled in favor of the Plaintiff, Daniel Jacob Goldberg, Chapter 7 Trustee (the "Trustee"), so as to allow his pursuit of claims brought against the Drewery Defendants

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as other evidentiary doctrines applicable to the specific parties in this proceeding.

under §§544 and 548 of the Bankruptcy Code in this adversary proceeding. After hearing evidence and argument on that limited issue, the Court took the matter under advisement.[2]

The history of the bankruptcy case underlying this adversary proceeding is crucial to the resolution of the present dispute. Hydro-Action, Inc. (the "Debtor") filed a Chapter 11 petition for bankruptcy relief on February 2, 2001, and subsequently confirmed a Chapter 11 plan of reorganization on March 12, 2002. The docket sheet of the case reflects the integral involvement of an active creditor's committee and the participation of other adversarial constituencies in the plan confirmation process. More than two years after the case filing, on May 27, 2003, the case was converted to a Chapter 7 liquidation. Shortly thereafter, Daniel Jacob Goldberg (the "Trustee") was appointed Chapter 7 Trustee, and, almost one year after his appointment, he commenced this adversary proceeding on May 26, 2004.

The Court has extensively discussed the concept of equitable tolling and its effect upon the enforcement of a limitation period in its prior Memorandum of Decision pertaining to the resolution of the Motion for Summary Judgment filed by the Drewery Defendants. As previously noted therein, "the application of equitable tolling is appropriate where: (1) a defendant has actively misled a plaintiff; (2) a plaintiff has been

---

[2] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding because it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(E), (F), (H) and (O).

prevented, in some extraordinary way or circumstance, from asserting his rights; or (3) a plaintiff has asserted his rights in a timely manner, but in the wrong forum." *Memorandum of Decision* issued March 14, 2006 (dkt #74) at p. 7 (*quoting In re Miller*, 333 B.R. 368, 372 (Bankr. N.D. Tex. 2005)). After specifying in the Memorandum that the timing of the trustee's appointment in this case was singularly insufficient to trigger equitable tolling under the second factor[3] and that the third factor was wholly

---

[3] The Court previously stated:

> While §546(a) is subject to equitable tolling, the singular fact that the limitations period expired prior to the appointment of the Chapter 7 trustee does not constitute an equitable consideration sufficient to trigger the tolling doctrine. In enacting §546(a), Congress clearly knew that a chapter 7 trustee could be appointed more than two years after the order for relief, yet it specifically provided for a one-year extension of the limitations period and only if the trustee was appointed within the two-year period. 11 U.S.C. §546(a)(1)(B). Congress could have enacted a different version in order to protect the rights of a chapter 7 trustee under circumstances such as this. It elected not to do so.

*Memorandum of Decision* issued March 14, 2006 (dkt #74) at p. 8.

At the hearing on this matter, the Trustee suggested that the case of *Young v. United States,* 535 U.S. 43, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002), supports the proposition that the Trustee in this case has been inequitably denied the opportunity to pursue this action. However, it is not the right of the Trustee, but rather the right of the unsecured creditors the Trustee represents, that must be protected. Those creditors benefited from the existence of an active creditors' committee, assisted by able counsel, and, as more extensively outlined in the prior Memorandum, they had access to the information which would suggest the existence of the claims which the Trustee now wishes to pursue on their behalf, and they possessed the means, via §§1102 or 1104, to pursue them. Furthermore, the supposedly inequitable result is a facially apparent consequence of a specific provision of the Bankruptcy Code as enacted.

In contrast, the IRS in *Young* reasonably believed its non-dischargeable claims would emerge unaffected by the debtor's chapter 13 proceeding, and therefore it saw no purpose in actively participating in that case, including any necessity to seek stay relief to pursue such claims during the pendency of the Chapter 13. It was only the debtor's serial filing for Chapter 7 relief after a substantial period of delay in, and the ultimate dismissal of, the debtor's Chapter 13 case which placed the non-dischargeable nature of the IRS' claims at risk. The Supreme Court invoked equitable tolling in that circumstance to prevent the inequitable result of the debtor's serial filing, and to protect an entity that had no means to protect itself during the period of inaction. *See id.* at 50 ["the IRS was disabled from protecting its claim during the pendency of the Chapter 13 petition, and this period of disability tolled the [limitations] period."].

inapplicable, the Court concluded that, in order to properly invoke equitable tolling under the facts of this case, the Plaintiff-Trustee had the burden to show by a preponderance of the evidence that the Drewery Defendants actively misled the body of creditors for whose benefit the Plaintiff-Trustee now wishes to act. On the other hand,

> If the creditors in this case had knowledge of, or with a reasonable amount of diligence could have obtained knowledge of, the potential avoidance actions and the debtor-in-possession's election to forego the pursuit of such actions as the two-year limitation period progressed, neither they nor any trustee subsequently appointed on their behalf will be heard to complain about the inequities of the application of a statute of limitations.

*Id.* at p. 11.

As to all of the Drewery Defendants other than Gig Drewery, the Trustee presented no evidence of any action or behavior by any of those persons or entities which even remotely suggests that the creditors were impeded in a quest for information about any of these transactions, or from thereafter seeking the appointment of a trustee or otherwise seeking authority of the court to prosecute any of these potential avoidance actions within the time frame allowed by §546(a). In fact, as set forth in the *Memorandum of Decision*, there was no creditor action sought at any time nor any battle regarding the prosecution of claims during the relevant time period. Therefore, invocation of the equitable tolling doctrine is improper as those defendants, and the Trustee's allegations under §§544 and 548 against all of the Drewery Defendants other than Gig Drewery are barred by the limitations clause of §546(a).

As to Gig Drewery individually, the Trustee presented no evidence of any improper pre-confirmation conduct by Drewery which would support the equitable tolling of the applicable limitation period established by §546(a) as to claims brought against him under §§544 and 548 of the Bankruptcy Code.  Indeed, as outlined in the earlier Memorandum as to the preference claims, and as supplemented by the evidence presented by the Drewery Defendants' in this limited trial, the creditors were not inhibited from pursuing potential avoidance actions in the pre-confirmation period.  The existence of the Master Transaction Agreement ("MTA") outlining the transactions by and among Drewery and his entities and the Craigs and their entities was revealed in the first few months of the case in 2001 and the disputes surrounding all of the transactions dominated the early days of the reorganization case.  Specific information regarding the MTA and the associated documents was made available to the unsecured creditors' committee and its counsel.  Diligent creditors could not have been unaware of them.  Despite such knowledge, the creditors did not oppose the Debtor-in-Possession's forbearance on the pursuit of any avoidance claims based upon the various transactions and they actively supported the continuing control of those causes of action by the Reorganized Debtor in the post-confirmation period.  Those creditor decisions were not unreasonable, nor were they triggered by "glowing statements" about the future of the Debtor.  They simply reflect the fact that these creditors, as is often present in Chapter 11 cases, were more interested in receiving plan payments than pursuing litigation.

As to Gig Drewery's conduct in the post-confirmation period, the only allegedly misleading conduct supported by evidence at trial was Drewery's failure, acting on behalf of the Reorganized Debtor, to file the monthly operating reports in the post-confirmation period. However, such evidence is far from sufficient to create a foundation upon which this Court can legitimately conclude that Drewery was attempting to mislead the creditor body in order to forego the prosecution of any avoidance claims. Based upon the evidence presented, it is more probable than not that Drewery was completely ignorant of the limitations period, and that creditors expecting payment under the terms of the confirmed plan were actually supporting his concentrated efforts in the post-confirmation period to overcome the unexpected business reversals which ultimately led to the company's failure and the conversion of the case to Chapter 7. Certainly the Trustee failed to produce any evidence from any creditor to the contrary. While the Trustee proffers that if the post-confirmation operating reports had been timely filed, the information contained therein would have so alarmed the creditors as to spur them to preserve their rights to prosecute these avoidance actions, that supposition is not so much a proper inference from the admitted evidence as it is an unsubstantiated legal argument. The evidence actually presented by the Trustee is simply insufficient to invoke the principles of equitable tolling against the expiration of the applicable limitation period established by §546(a) as to claims brought against Gig Drewery under §§544 and 548 of the Bankruptcy Code.

Because the limited trial from which this memorandum arises was a bifurcated proceeding pertaining to the limitations defense pled by the Drewery Defendants in this case, no order or judgment will be entered at this time.  The Court shall forthwith enter a final scheduling order to establish the procedure and scheduling for resolution of the remaining issues in this case, and upon resolution of those issues, a final judgment will be entered which will incorporate a judgment in favor of the Drewery Defendants as to all claims brought by the Trustee that are subject to the limitations defense of 11 U.S.C. §546(a).

Signed on 06/01/2006

*[signature: Bill Parker]*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE